J-S47016-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL LEE SCHMIDT | : | |
| | : | |
| Appellant | : | No. 1598 WDA 2017 |

Appeal from the Order Entered October 25, 2017
In the Court of Common Pleas of Lawrence County Criminal Division at
No(s):  CP-37-CR-0000973-2014

BEFORE:   OLSON, J., McLAUGHLIN, J., and STRASSBURGER*, J.

MEMORANDUM BY McLAUGHLIN, J.:               **FILED AUGUST 31, 2018**

The Commonwealth appeals from the order entered October 25, 2017, which in part granted Michael Lee Schmidt's motion to dismiss charges pursuant to statutory double jeopardy as defined by 18 Pa.C.S.A. § 111.[1]  In this case, the Commonwealth seeks to prosecute Schmidt for his role in a conspiracy to distribute heroin in Lawrence County, Pennsylvania.  However, Schmidt has already pleaded guilty to conspiracy, based upon the same conduct, in federal court in Ohio.  As the Commonwealth failed to establish that its prosecution requires proof of a fact not required by the federal prosecution and that the harm it intends to prevent is substantially different, we affirm.

---

*   Retired Senior Judge assigned to the Superior Court.

[1] The Commonwealth certifies that the order granting Schmidt's motion substantially handicaps the prosecution of this case.  **See** Pa.R.A.P. 311(d).

The trial court set forth facts and procedural history, which we adopt and incorporate herein. Trial Court Pa.R.A.P. 1925(a) Opinion, filed November 8, 2017, at 1-8.

The Commonwealth raises the following issues on appeal:

1. Whether the trial court erred in dismissing Counts 2, 3, 4, 5, 6, 7, 8, 10, 11 and 12 charging Conspiracy (18 Pa.C.S.A. § 903) pursuant to 18 Pa.C.S.A. § 111 through application of **Commonwealth v. Savage**, 566 A.2d 272 (Pa.Super. 1989) in finding that a single and broader conspiracy existed between the Ohio indictment and the Commonwealth's prosecution.

2. Whether the trial court erred in finding 18 Pa.C.S.A. § 111, through application of **Commonwealth v. Wetton**, 591 A.2d 1067 (Pa.Super. 1991); **Commonwealth v. Besch**, 544 Pa. 1, 674 A.2d 655 (1996) in dismissing the substantive corrupt organizations charge[2] at Count 1 of the Information.

Commonwealth's Br. at 8 (unnecessary capitalization omitted) (issues reversed for ease of analysis).

The Commonwealth's issues present questions of law, which are subject to plenary review in this Court. **See Commonwealth v. Williams**, 151 A.3d 1113, 1114 (Pa.Super. 2016); **Wetton**, 591 A.2d at 1071.

In Pennsylvania, the Commonwealth may not prosecute an individual for criminal acts under certain circumstances where the individual has been prosecuted for the same conduct in another jurisdiction. A subsequent prosecution is barred, in relevant part, where:

[t]he first prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution

---

[2] **See** 18 Pa.C.S.A. § 911.

barred by former prosecution for same offense) and the subsequent prosecution is based on the same conduct unless:

(i) the offense of which the defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other *and* the law defining each of such offenses is intended to prevent a substantially different harm or evil[.]

18 Pa.C.S.A. § 111(1)(i) (emphasis added).

The Pennsylvania Supreme Court has approved a three-part inquiry to determine whether Section 111 bars a subsequent prosecution.

(1) Is the prosecution the Commonwealth proposes to undertake based on the same conduct for which the individual was prosecuted by the other jurisdiction?

(2) Do each of the prosecutions require proof of a fact not required by the other?

(3) Is the law defining the state offense designed to prevent a substantially different harm or evil than the law defining the other jurisdiction's offense?

***Commonwealth v. Traitz***, 597 A.2d 1129, 1132-33 (Pa. 1991) (quoting ***Commonwealth v. Abbott***, 466 A.2d 644, 649 (Pa.Super. 1983)). Although the statute is silent regarding the relevant burden of proof, it is well settled that

when a defendant raises a non-frivolous *prima facie* claim that a prosecution may be barred under 18 Pa.C.S.A. § 111, the prosecution bears a burden to prove *by a preponderance of the evidence* either that the "same conduct" is not involved, or that a *statutory exception* to the *statutory bar* on reprosecution applies.

***Commonwealth v. Savage***, 566 A.2d 272, 284 (Pa.Super. 1989) (emphasis in original).

In its first issue, the Commonwealth contends the trial court erred in failing to consider appropriately the evidence in support of its contention that Schmidt engaged in multiple conspiracies to distribute heroin. *See* Commonwealth's Br. at 40-64 (asserting, without supportive legal authority, that federal investigation produced insufficient evidence and that Schmidt's guilty plea "bolstered" the federal investigation).[3] However, the apparent depth and detail of the Commonwealth's investigation does not reveal *different* criminal conduct by Schmidt. Rather, it merely confirms that the conduct prosecuted by federal officials – and for which Schmidt has pleaded guilty – encompasses the same conduct for which the Commonwealth seeks to prosecute.

In **Savage**, this Court similarly focused on an elaborate criminal conspiracy to distribute narcotics. **See Savage**, 566 A.2d at 273-74. At issue was the role of a single defendant, who the Commonwealth asserted was the sole link between multiple conspiracies. **Id.** at 275. Based on facts similar to those present here, we rejected the Commonwealth's assertion.

---

[3] The Commonwealth's repeated citations to Exhibit A, including an affidavit signed by Special Agent James C. McCann in support of a federal wiretap application are inappropriate. **See, e.g.**, Commonwealth's Br. at 44, 45, 46, 49, etc. Based on our review of the record, Exhibit A was never introduced or incorporated into the certified record. We caution the Commonwealth that "for purposes of appellate review, what is not of record does not exist." **Commonwealth v. Johnson**, 33 A.3d 122, 126 n.6 (Pa.Super. 2011). We need not sanction the Commonwealth, as the affidavit does not impair our analysis. Incidentally, even if it were of record, it would not change the outcome of this appeal.

Plainly, the distribution of cocaine from an importer to a wholesaler or retailer envisions and in fact requires the wholesaler or retailer to enter into further agreements with others to profitably dispose of the wholesaler's or retailer's inventory, thereby providing capital for future intended purchases from the importer. Thus, the fact that appellant was the sole link between the conspiracies was rendered virtually insignificant in light of appellant's roles as a buyer in the federal conspiracy, and as a seller in the alleged state conspiracy.

*Id.* at 285 (concluding that state-alleged conspiracy "merely a necessary facet of the broader federal conspiracy").

Here, as concluded by the trial court, Schmidt distributed heroin from the wholesale level to retailers. *See* Trial Ct. Pa.R.A.P. 1925(a) Op. at 14. Essentially, Schmidt's distribution network in Lawrence County was merely a facet of the broader conspiracy based in Ohio. Thus, Schmidt's link between an importer and the retail distribution network did not establish separate conspiracies. *Id.* (citing in support *Savage*). After review of the record, the parties' briefs, and the relevant law, we affirm on the basis of the well-reasoned opinion of the Honorable J. Craig Cox, which we incorporate herein. *Id.* at 7-17.[4]

In its second issue, the Commonwealth similarly contends that, with regard to its substantive, corrupt organizations charge, the trial court erred in concluding that it seeks to prosecute Schmidt for the same conduct for which

---

[4] The Commonwealth's argument focuses solely on the first part of the *Traitz* inquiry. *See* Commonwealth's Br. at 38-64. Thus, it has conceded that it cannot meet the "different required facts/substantially different interests" exception to the bar on re-prosecution. *See Savage*, 566 A.2d at 285; *see also* Pa.R.A.P. 2119 (Argument).

- 5 -

he has already pleaded guilty. *See* Commonwealth's Br. at 65-68. For the reasons set forth above, we reject this contention. The Commonwealth further suggests that proper analysis of the second part of the *Traitz* inquiry, *i.e.*, the "different required facts" exception, militates in favor of its prosecution. *Id.* at 68-71. However, the Commonwealth seemingly concedes that it cannot establish the "substantially different interests" exception to the bar on re-prosecution. *Id.* (failing to address this exception in its analysis); *see also* 18 Pa.C.S. § 111(1)(i) (requiring Commonwealth to establish *both* different required facts *and* substantially different interests exceptions before re-prosecution permitted). Accordingly, the Commonwealth is due no relief.

As described succinctly in the trial court's opinion, resolution of this issue hinges upon the proper understanding of the harm the General Assembly intended to address in the corrupt organizations statute. *See* 18 Pa.C.S. § 911. The Assembly's legislative response to *Commonwealth v. Besch*, 674 A.2d 655 (Pa. 1996), is instructive. In *Besch*, our Supreme Court concluded that the "clear intent" of Section 911 was to prevent infiltration of legitimate businesses by organized crime. *Besch*, 674 A.2d at 659 (thereafter vacating appellant's judgment of sentence for corrupt organizations where drug conspiracy was entirely illegitimate). However, following this interpretation, the General Assembly amended Section 911, prohibiting racketeering activities in both "legitimate as well as illegitimate entities." *See* 18 Pa.C.S.A. § 911(h)(3); *see also, e.g.*, *Commonwealth v. Williams*, 141 A.3d 440, 449 n.8 (Pa. 2016) (recognizing *Besch* superseded by statute)

- 6 -

J-S47016-18

Effectively, the General Assembly's amendment breathed new life into a prior, plurality opinion of the Court. In circumstances similar to those present here, in **Commonwealth v. Wetton**, 641 A.2d 574 (Pa. 1994), the Court stated the following:

> While federal drug conspiracy is a different crime from substantive corrupt organizations, both statutes are used in this case to protect the same governmental interest the elimination of the pervasive drug trafficking network in our society. … [T]herefore, … the proper application of Section 111 of the Crimes Code bars [a]ppellant[']s prosecution on all substantive corrupt organizations charges, 18 Pa.C.S.A. § 911(b)(3). To hold otherwise would be to apply Section 111 in such a narrow and limiting manner so that dual prosecution would effectively be barred only where exact crimes match exact dates - crime for crime and date for date. Because the federal drug conspiracy statute and the state substantive corrupt organizations statute protect the same governmental interest, … the third **Traitz** question is answered in the negative and therefore the statutory bar of 18 Pa.C.S.A. § 111 cannot be lifted.

**Id.** at 579-80 (plurality opinion in support of reversal). Thus, after review of the record, the parties' briefs, and the relevant law, we affirm on the basis of the well-reasoned opinion of the Honorable J. Craig Cox, which we incorporate herein. **Id.** at 17-21.

Order affirmed; case remanded for further proceedings; jurisdiction relinquished.

Judgment Entered.

- 7 -

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/31/2018</u>

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS

VS. : LAWRENCE COUNTY, PENNSYLVANIA

MICHAEL LEE SCHMIDT, : CRIMINAL DIVISION

Defendant. : NO. 973 OF 2014

## APPEARANCES

For The Commonwealth: 

Diane M. Shaffer, Esq.
Office of the District Attorney
430 Court Street
New Castle, PA 16101

For The Defendant:

Thomas N. Farrell, Esq.
100 Ross Street, Suite 1
Pittsburgh, PA 15219

## OPINION

COX, J. November 8, 2017

This Court authored this Opinion pursuant to Pa.R.A.P. 1925(a) regarding the appeal filed by the Commonwealth of Pennsylvania from this Court's partial grant of Defendant Michael Lee Schmidt's Motion to Dismiss Based on Double Jeopardy and 18 Pa.C.S. § 111. This Court granted the Motion as to the Conspiracy and Corrupt Organizations charges and left in place the charges of Corruption of Minors and Delivery of a Controlled Substance.

The case was before this Court on May 27, 2016, July 8, 2016, and August 8, 2016, for hearings on Omnibus Pretrial Motions filed by the Defendant. Following the hearings, a briefing schedule was set, with numerous extensions requested by both the Commonwealth and the Defendant.

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

FILED/ORIGINAL

2017 NOV -8 AM 10: 50

HELEN L. MORGAN
PRO AND CLERK

The evidence presented for this Court's consideration included the Preliminary Hearing transcripts of the Defendant, the Preliminary Hearing transcripts of his alleged co-conspirators, as well as the transcripts from the Omnibus Pretrial Hearings held before this Court, transcripts and evidence from the Defendant's Federal case, and other exhibits relating to the investigation of the case before this Court. Taken together, the facts are as follows.

Frank Drew, head of the District Attorney's Drug Task Force ("Task Force") in Lawrence County and former Drug Enforcement Agency group supervisor, investigated the manner in which heroin was distributed in Lawrence County and he discovered a structure concerning the drug's distribution. The Commonwealth submitted the transcript of the preliminary hearings of Defendant's alleged co-conspirators in which Detective Drew testified there was a hierarchy spanning from the drug supplier to street-level distributors. According to Detective Drew, this hierarchy consisted of three levels, which included the source of supply, as many as four upper-level dealers and an indeterminate number of street-level dealers. The upper-level dealers determined the number of street-level dealers who worked for them. Detective Drew also stated the lower two levels crossed over concerning their roles in the organization as they were interlinked.[1]

Detective Thomas Costa of the New Castle Police Department, assigned to the Drug Task Force,[2] stated that in June or July of 2013, he and other detectives commenced an investigation into heroin distribution in New Castle due to the number of people overdosing from that substance and the frequency at which police noticed the

---

[1] Notes of Testimony of Defendant's co-conspirators at Case Nos. 390, 703, 704, 705, 706,and 707 of 2014; testimony of Frank Drew, pp. 12-24 (general description of hierarchy).

[2] Testimony in the hearing referred to the Drug Task Force interchangeably with the "Special Investigations Unit." The Court will refer to both units as the Drug Task Force. See e.g. Notes of Testimony, Omnibus Pretrial Hearing, August 8, 2016, p. 4.

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

2017 NOV -8 AH 10: 50

HELEN L. MORGAN
PRO TH CLERK

drug appeared in their investigations. The police officers received aid from ten confidential informants ("CI") and a confidential source as well as outside law enforcement agencies.

Detectives from the Lawrence County Drug Task Force interviewed several of these confidential informants, each of whom indicated the Defendant was purchasing heroin from a source in the Youngstown, Ohio area, though the informants provided differing aliases of the source. The informants further described the source as either being black or Puerto Rican.

The confidential informants described the nature of the drug distribution network of which the Defendant is accused of operating. One confidential informant described driving the Defendant to Youngstown to pick up fifty thousand dollars worth of heroin. Other informants described that the Defendant would act as a wholesaler to three different individuals: M.S., Christopher Gravatt, and Defendant's brother Anthony Schmidt. These three individuals would then distribute to lower level dealers who would themselves sell smaller amounts at retail.

Jamie Clobus, M.S.'s girlfriend, corroborated the statements of the confidential informants. At the height of these events, M.S. did not have a driver's license. Clobus would drive him. As part of the driving she did for M.S., Clobus would drive M.S. to Youngstown, Ohio for M.S. to purchase heroin from a black male called 'Face'. During one trip to Youngstown, Clobus and M.S. were pulled over by police. After that, M.S. had a discussion with his father, the Defendant, who told M.S. from then on to buy the heroin directly from him. Clobus was present during at least some of the purchases by M.S.

FILED/ORIGINAL

2017 NOV -8 AM 10: 50

HELEN I. MORGAN
PROTHD CLERK

from the Defendant. Clobus told Detective Costa M.S. would re-supply from the Defendant a few times a week.

On May 29, 2014, Detective Costa was contacted by Ohio law enforcement indicating they were aware who the Defendant's supplier was, and they believed the Defendant would be coming to Youngstown on that day for a meeting with the supplier. The Ohio police told Detective Costa the identity of the supplier was Alberto Delgado, also referred to as Poppy. Because of this interjurisdictional cooperation, a joint investigation began between the Lawrence County Drug Task Force and authorities in Ohio.

The same day as this first contact with the Ohio authorities, the Lawrence County Drug Task Force engaged in surveillance of a black Pontiac which they previously had determined to belong to the Defendant. Anthony Sinibaldi got into the driver's side of the vehicle and the Defendant got into the passenger's side. The police then surveilled the Defendant as they drove into Ohio on State Route 422. When the Defendant's vehicle reached the Ohio border, the Task Force discontinued surveillance, allowing the Ohio police to take over. The Lawrence County Drug Task Force maintained contact with the Ohio authorities. The Lawrence County Drug Task Force was unable to follow the Defendant on his return from Ohio, however Lieutenant Anthony Lagnese had set up surveillance at the Defendant's residence. Lieutenant Lagnese observed the Defendant enter the front door of his residence. A short time after this observation Christopher Gravatt went into the residence and then eventually left the scene.

Statements from C.I. 3 indicated the Defendant was buying heroin in such significant quantities that Delgado would come to Lawrence County to make deliveries.

FILED/ORIGINAL

2017 NOV -8 AM 10: 50

HELEN L. MORGAN
PRO AND CLERK

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

On May 30th, the Task Force was able to corroborate this information. In the interim time between the Ohio authorities' first contact with the Task Force regarding the Defendant, the agencies had kept in contact. On the 30th, the Ohio authorities indicated Delgado was supposed to be travelling to the Defendant's residence in New Castle. The next day, the Task Force reinitiated surveillance of the Defendant's residence. The Ohio authorities indicated Delgado was in route, in a green Nissan with a New York license plate.

The surveillance of the Defendant's residence first observed Anthony Sinibaldi and Anthony Schmidt pull in front of the residence and get out of a car. Then, as Anthony Schmidt was exiting the vehicle, a green Nissan with New York plates was observed and photographed. Anthony Schmidt went inside the residence and the green Nissan parallel parked in front. Two Puerto Rican males exited the green Nissan and Detective Costa was able to identify Delgado as the passenger based on a photograph they had received from the Ohio authorities. The Task Force was unable to identify the driver. The two Puerto Rican males entered the residence. Approximately ten minutes later, M.S. pulled up in an Acura and entered the residence. A short time after that, Delgado left the residence with his driver and he appeared to be carrying something in his pockets. Delgado and the driver left and the Task Force followed them to the Pennsylvania-Ohio border.

On June 24th, the Task Force applied for and received search and arrest warrants for the Defendant and Anthony Schmidt. The warrants were served at their residence the same day.[3] The Defendant was arrested at his residence.

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

---

[3] Anthony Schmidt partially resided at the Defendant's residence and partially resided in other locations.

FILED/ORIGINAL

2017 NOV -8 AM 10: 50

HELEN L. MORGAN
PRO AND CLERK

Eventually, the Defendant was formally interviewed. As a result of this interview, Schmidt made a verbal statement explaining in significant detail the extent of the drug trafficking organization. Relevant to issues before this Court, the Defendant stated he was purchasing heroin from Delgado 1-2 times a week over a period of two years. He further advised he progressed from buying 10-15 grams at a time to up to 500 grams at a time. Originally, he had been going to Youngstown to meet Delgado and obtain the heroin, but that problems in Youngstown eventually led Delgado to deliver the heroin to the Defendant in New Castle.

Defendant raised several issues in its Omnibus Pretrial Motions. The appeal concerns the Defendant's final issue which argued the Commonwealth's case was barred by Pennsylvania's statutory double jeopardy provision at 18 Pa.C.S. § 111.

The Commonwealth raises two issues in its Concise Statement of Matters Complained of on Appeal:

1.      Whether the trial court erred in finding 18 Pa.C.S.A. § 111 through application of *Commonwealth v. Wetton*, 591 A.2d 1067 (Pa. Super. 1991); *Commonwealth v. Besch*, 544 Pa. 1, 674 A.2d 655 (1996) in dismissing the substantive Corrupt Organizations charge (18 Pa.C.S.A. § 911(b)(2)), at Count 1 of the Information.

2.      Whether the trial court erred in dismissing counts 2, 3, 4, 5, 6, 7, 8, 10, 11, and 12 charging Conspiracy (18 Pa.C.S.A. § 903) pursuant to 18 Pa.C.S.A. § 111 through application of *Commonwealth v. Savage*, 566 A.2d 272 (Pa. Super. 1989); *Commonwealth v. Abbott*, 466 A.2d 644 (Pa. Super. 1983); and *United States v. Lanza*, 260 U.S. 377, 382, 43 S.Ct. 141, 142, 64 L.Ed. 314 (1922), in finding that a single and

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

FILED/ORIGINAL

2017 NOV -8 AM 10: 50

HELEN I. MORGAN
PRO   D CLERK

broader conspiracy existed between the Ohio Indictment and the Commonwealth's prosecution.

The appeal arises out of this Court's grant of the Defendant's Motion to Dismiss the charges of Corrupt Organizations and Conspiracy. This Court's reasoning was as follows:

18 Pa.C.S. § 111 provides:

"When conduct constitutes an offense within the concurrent jurisdiction of this Commonwealth and of the United States or another state, a prosecution in any such other jurisdiction is a bar to a subsequent prosecution in this Commonwealth under the following circumstances:

(1) The first prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for same offense) and the subsequent prosecution is based on the same conduct unless:

(i) the offense of which the defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other and the law defining each of such offenses is intended to prevent a substantially different harm or evil; or

(ii) the second offense was not consummated when the former trial began.

(2) The former prosecution was terminated, after the indictment was found, by an acquittal or by a final order or judgment for the defendant which has not been set aside, reversed or vacated and which acquittal, final order or judgment necessarily required a determination inconsistent with a fact which must be established for conviction of the offense of which the defendant is subsequently prosecuted."

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

FILED/ORIGINAL

2017 NOV -8 AM 10: 50

HELEN I. MORGAN
PRO HID CLERK

The case before this Court fell under the analytical framework of subsection (1)(i). The Criminal Complaint was filed against the Defendant in Pennsylvania on June 23, 2014. The Defendant was arrested by authorities in Pennsylvania on June 24, 2014. The Information was filed against Defendant on October 1, 2014. On December 2, 2014, a Federal Indictment was filed against the Defendant and others in the Northern District of Ohio. On December 3, 2014, by Preliminary Order of Court, President Judge Dominick Motto scheduled a hearing on the Omnibus Pretrial Motion on February 2, 2015, before now Senior Judge, Thomas M. Piccione. On January 6, 2015, Judge Piccione continued the case on the Court's own motion to February 6, 2015. On January 13, 2015, March 18, 2015, and May 5, 2015, three Motions for Continuance were filed by the Defendant, not opposed by the Commonwealth, and Granted by Judge Piccione. On May 27, 2015, the Defendant pleaded guilty pursuant to a plea agreement to count 1 of the Federal criminal indictment alleging a violation of 21 U.S.C. § 846 and violations of 21 U.S.C. § 841. He was sentenced in the Federal case on October 1, 2015. Several additional Motions for Continuance and additional Omnibus Pretrial Motions delayed the first hearing on the Motions to May 27, 2016.

Defendant avers the conduct to which he pleaded guilty in Federal Court is part of the overall criminal enterprise of drug trafficking comprising both the Ohio and the Lawrence County distribution network. "[W]hen a defendant raises a non-frivolous prima facie claim that a prosecution may be barred under 18 Pa.C.S. § 111, the prosecution bears a burden to prove by a preponderance of the evidence either that the 'same conduct' is not involved, or that a statutory exception to the statutory bar on reprosecution applies." Com. v. Savage, 566 A.2d 272, 284 (Pa. Super. 1989). "A

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

FILED/ORIGINAL

2017 NOV -8 AM 10: 50

HELEN I. MORGAN
PRO A'Y CLERK

frivolous claim is a claim clearly and palpably without merit; it is a claim which presents no debatable question." Com. v. Gains, 556 A.2d 870, 874 (Pa. Super. 1989). Despite the Commonwealth's contention there is a low amount of overlap between the conspiracies, the claim these conspiracies are part of a single larger criminal conspiracy is not so without merit to warrant a determination of frivolousness. Therefore, the Court finds Defendant has put forward a non-frivolous prima facie claim that a prosecution may be barred under 18 Pa.C.S. § 111.

Applicable throughout the analysis, the Commonwealth stated in its brief the Defendant pleaded guilty to 21 U.S.C. § 841 and not to Section 846 of the same Title. This is incorrect. While Count 1 of the federal indictment does not explicitly reference Section 846, it does state "As to Michael L. Schmidt, aka "Big Mike" ..., those defendants *conspired to possess* with intent to distribute and to distribute a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(c)." (emphasis supplied). Section 841 charges substantive crimes relating to possession, manufacture, and delivery of controlled substances. Section 846 is the general conspiracy and attempt provision which covers all conspiracies under the same subchapter, including Section 841. Because Defendant was charged with *conspiring* to violate 21 U.S.C. § 841, he was charged under Section 846, even though it was not explicitly stated in Count 1.

While this is evident from a precise reading of Count 1, it is reinforced in the federal guilty plea proceeding. Assistant United States Attorney David M. Toepfer, Esquire, states, "Your Honor, the defendant is pleading guilty to 21, United States Code, Section 846 and 841(a)(1), (b)(1)(c), a drug conspiracy."

FILED/ORIGINAL

2017 NOV -8 AH 10: 50

HELEN L. MORGAN
PRO␣␣␣CLERK

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

The Commonwealth made a second generally applicable argument as to double jeopardy resting on the reasoning of United States v. Roman, 13141-05, 2015 WL 224370, at *2 (E.D. Pa. Jan. 14, 2015), for the proposition "there is no double jeopardy bar to prosecuting a defendant in federal court for the same conduct for which he was prosecuted in state court." Id.

This argument relies on a misinterpretation of the asymmetric nature of the rules of Federal Courts and those of the Commonwealth of Pennsylvania. In United States v. Lanza, 260 U.S. 377, 382, 43 S.Ct. 141, 142, 67 L.Ed. 314 (1922), the Supreme Court of the United States first set forth the theory of separate sovereigns when it held: "It follows that an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each." Id. Since that pronouncement, courts, commentators, and some states have expressed the inequity which they believed resulted from this allowance of separate prosecutions for the same act. As the Commonwealth itself acknowledges, even the Roman Court on which they rely expressed distaste for the separate sovereigns theory which required the result in that case. In 1973, 18 Pa.C.S. § 111 was enacted as P.L. 1482 likely in response to the developing law of separate sovereignty. With that enactment, Pennsylvania bound itself to not prosecute under certain circumstances where an individual was prosecuted for the same conduct in another jurisdiction. This enactment does not affect Federal Courts, even those based in Pennsylvania, and it does not affect a constitutional double jeopardy analysis. When Roman stated "there is no double jeopardy bar to prosecuting a defendant in federal court for the same conduct for which he was prosecuted in state court," Roman, at *2, the court was referring only to the constitutional double jeopardy

FILED/ORIGINAL

2017 NOV -8 AM 10: 50

HELEN L. MORGAN
PRO A/D CLERK

protections and not the additional state protections by which the Federal Courts are not bound. While it is true there is generally no bar to prosecuting a defendant in Federal Court for the same conduct for which he was prosecuted in state court, the converse is not accurate. Constitutional double jeopardy issues may not bar the prosecution, but the ultimate outcome concerns the application of Section 111.

The Commonwealth, in its Concise Statement of Matters Complained of on Appeal states this Court relied on Lanza in finding a single conspiracy. To be clear, Lanza only forms the background of the doctrine of separate sovereignty and does not control this Court's application of Section 111.

Continuing to the gravamen of the argument, applying Com. v. Abbott, 466 A.2d 644 (Pa. Super. 1983), the Pennsylvania Supreme Court in Com. v. Traitz, 597 A.2d 1129, 1132–33 (Pa. 1991) created a three question inquiry with regard to whether Section 111 applies to bar a subsequent prosecution.

(1) Is the prosecution the Commonwealth proposes to undertake based on the same conduct for which the individual was prosecuted by the other jurisdiction?

(2) Do each of the prosecutions require proof of a fact not required by the other?

(3) Is the law defining the state offense designed to prevent a substantially different harm or evil than the law defining the other jurisdiction's offense?

Abbott further provides the method with which to apply these three prongs.

"If we conclude that the subsequent prosecution is not based on the same conduct as the federal prosecution, then our analysis is concluded since the statute makes clear that in such situation subsequent prosecution by the Commonwealth is not barred. If, however, we conclude the subsequent prosecution by the Commonwealth "is

FILED/ORIGINAL

2017 NOV -8 AM 10: 50

HELEN I. MORGAN
PRO ANO CLERK

based on the same conduct" for which appellant was prosecuted by the federal government, the prosecution can proceed only if *both* of the following conditions exist: (1) each of the prosecutions requires proof of a fact not required of the other; and (2) the statute upon which the Commonwealth prosecution is based is intended to prevent substantially different harm than is the federal statute ... It would seem that an affirmative answer to the initial inquiry lowers the bar to the subsequent prosecution and that only an affirmative response to *both* of the remaining inquiries can lift the bar." Abbott, 466 A.2d at 649 (emphasis supplied).

Then, the first question for this Court was whether the prosecution the Commonwealth proposes to undertake is based on the same conduct for which the individual was prosecuted by the other jurisdiction. For the Commonwealth to avoid the second and third Traitz questions, they must prove by a preponderance of the evidence the federal and state charges are not based on the same conduct. Savage, 566 A.2d at 284.

With regards to the similarity of the conduct involved in the case before this Court, the Commonwealth's argument was, rather than a single conspiracy, there are two separate conspiracies which were charged separately and should be treated separately here. In its brief in support, the Commonwealth asserts "[t]he only overlapping evidence between the Ohio Indictment and this case and its consolidated co-defendants is (1) the defendant was obtaining his supply of heroin for distribution within Lawrence County from Delgado; and (2) the Commonwealth presented photographic evidence of Delgado meeting with the defendant at the defendant's residence, here in New Castle in May of

FILED/ORIGINAL

2017 NOV -8 AM 10: 50

HELEN I. MORGAN
PRO ... CLERK

2015, evidencing the delivery of heroin from Delgado to this defendant as arranged and recorded by the federal authorities in Ohio."[4]

The Defendant does not argue the contacts between the lower levels of the New Castle conspiracy are significant and intertwined with all levels in the Ohio conspiracy, but rather, the contacts between the Defendant and Delgado are sufficient to establish a single conspiracy involving both locations and each network of individuals.

The Superior Court in Com. v. Savage, 566 A.2d 272 (Pa. Super. 1989) analyzed the distinction between a single conspiracy and multiple conspiracies in the context of drug trafficking operations as follows.

"The relevant overt acts in the federal conspiracy were a series of bulk purchases of cocaine for resale, by appellant from Moskovitz. The relevant overt act in the state conspiracy was a single sale of a smaller bulk amount of cocaine for resale, by appellant to Ms. Janoski and Mr. Lipinski. Appellant is the only person designated as a named conspirator in both conspiracies. The overt act alleged in furtherance of the state conspiracy occurred during the continuance of the federal conspiracy. The acts of both conspiracies occurred in the same general area. Both conspiracies involved the illegal sale of cocaine.

In light of the absence of any indication that appellant used any source other than Moskovitz as a supply for his wholesale/retail cocaine distribution operation, it would appear that, *vis a vis* appellant, the sale of cocaine which formed the basis of the present state conspiracy charge could quite possibly have been a necessary facet of his ongoing conspiracy with Moskovitz to wholesale and/or retail cocaine. Plainly, the distribution of cocaine from an importer to a wholesaler or retailer *envisions* and in fact

---

[4] Commonwealth's Brief in Opposition of Omnibus Pretrial Motions, p.22.

FILED/ORIGINAL

2017 NOV -8 AM 10: 50

HELEN I. MORGAN
PRO A?? CLERK

*requires* the wholesaler or retailer to enter into further agreements with others to profitably dispose of the wholesaler's or retailer's inventory, thereby providing capital for future intended purchases from the importer. Thus, the fact that appellant was the sole link between the conspiracies was rendered virtually insignificant in light of appellant's roles as a *buyer* in the federal conspiracy, and as a *seller* in the alleged state conspiracy." Id. at 284-285 (emphasis in original).

Savage ultimately held "[w]hile it is possible that appellant had a separate cocaine source for the sale to Ms. Janowski and Mr. Lipinski and that the state conspiracy was entirely unrelated to the federal conspiracy, on this record, it is at least equally likely that the state conspiracy was merely a necessary facet of the broader federal conspiracy." Id. at 285.

The circumstances before the Court closely mirror those in Savage. In Savage, the evidence presented was the Appellant was the distributor from the wholesale level to retailers, the equivalent of the Defendant; Moskovitz was an importer who provided the cocaine to the distributor, the equivalent of Delgado; and Janoski and Lipinski were ultimate retailers, the equivalent of the many retailers in this case, including M.S., Gravatt, Anthony Schmidt, and others.

Without addressing the prior precedent in Savage and the factual similarities that case presents, the Commonwealth rested its argument on Delgado and the Defendant being the only members of the federal indictment who are focused on in the Lawrence County Corrupt Organizations case, with only the Defendant being charged in both cases. The Savage holding is clear that this factor is not dispositive. In any complex

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

FILED/ORIGINAL

2017 NOV -8 AM 10: 50

14

HELEN I. MORGAN
PRO / TH CLERK

import-distribution-retail network, the handling of the distribution leg by a single party does not necessarily isolate the retail side of the network from the import side.

Additional factual aspects of this case did not require this Court to rest merely upon the reasoning in Savage. Restated, Savage's holding is that a single conspiracy may be established in a drug distribution network when the connection between the import-distribution conspiracy and the distribution-retail conspiracy is a single person, and further it is the Commonwealth's burden to show the separateness of the networks. This case involves more than this singular connection between the two networks. The Commonwealth glazes over the significance of the observed May 31, 2014, meeting at the Defendant's residence, stating, "the Commonwealth presented photographic evidence of Delgado meeting with the defendant at the defendant's residence here in New Castle in May of 2015 (sic), evidencing the delivery of heroin from Delgado to this defendant as arranged and recorded by the federal authorities in Ohio."[5] What the Commonwealth fails to state is that also present at the meeting were many players in the retail conspiracy, including Anthony Schmidt, M.S., and Anthony Sinibaldi. With this meeting, the attenuated connection between the two conspiracies is strengthened and is far from solely consisting of the Defendant and Delgado.

Lastly, in favor of finding the conduct under the federal and state cases to be the same, the Court looks to the Federal Indictment. In describing the "Manner and Means of the Conspiracy" the Federal Indictment states: "It was further part of the conspiracy that [Delgado] supplied heroin to [the Defendant] for distribution in the New Castle, Pennsylvania, area." The Federal Indictment itself considers the New Castle distribution

[5] Commonwealth's Brief in Opposition of Omnibus Pretrial Motions, p.22.

FILED/ORIGINAL

2017 NOV -8 AM 10: 50

HELEN L MORGAN
PROTH. CLERK

network to be part of the broader conspiracy to which Defendant pleaded guilty in Federal Court.

As in Savage, the Commonwealth did not meet their burden of showing by a preponderance of the evidence the conduct involved in the state and federal cases is not the same.

Because the first of the Traitz questions was answered in the affirmative indicating the same conduct was involved in the federal and state cases, this Court turned to the second and third prongs to determine if the charges constitute statutory double jeopardy under Section 111.

The most recent Amended Information, filed on May 14, 2015, charges the Defendant with five types of charges: Corrupt Organizations – Control in Enterprise, 18 Pa.C.S. § 911(b)(2); Criminal Conspiracy to Violate 35 P.S. § 780-113(a)(30), 18 Pa.C.S. § 903; Possession with Intent to Deliver, 35 P.S. § 780-113(a)(30); Corruption of Minors, 18 Pa.C.S. § 6301(a)(1)(ii); and Conspiracy to Violate Corrupt Organizations, 18 Pa.C.S. § 911(b)(4).[6]

Beginning with the several charges of Conspiracy, the holding in Savage bars the state prosecution for Conspiracy to Violate 35 P.S. § 780-113(a)(30). While the principal issue in Savage was not the application of the second and third Traitz questions, the application of those questions to the fact pattern did not go unresolved. Savage held: "the Commonwealth failed to meet its burden to establish by a preponderance of the evidence that separate conspiracies were involved, and likewise failed to establish the existence of substantially different interests to be protected by the second conspiracy

---

[6] The Defendant in their Brief in Support of the Motion to Dismiss addresses the additional charge of Corrupt Organizations – Employee, pursuant to 18 Pa.C.S. § 911(b)(3), however from the most recent amended information, the Commonwealth is not charging the Defendant on that issue.

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

prosecution within the meaning of the "different required facts/substantially different interests" exception to the bar on reprosecution... Appellant is DISCHARGED as to the state conspiracy charge." Savage, 566 A.2d at 285. The second and third Traitz questions regarding the nature of the government interests involved do not depend on factual distinctions from case to case but rather rely on the legal principles behind specific charges. For this reason, the application of Savage to this aspect of the present Conspiracy charges did not require relitigation. For these reasons Counts 2, 3, 4, 5, 6, 7, 8, 10, 11, and 12 were DISMISSED with prejudice.

Next, the Court addressed Count 1 of the Information, the charge of Corrupt Organizations – Control in Enterprise, and Count 14, the charge of Conspiracy to Violate the Corrupt Organizations statute pursuant to Section 911(b)(4).[7]

Whether the charges of Corruption Organizations under Section 911(b)(3) and 911(b)(4) in Pennsylvania are barred by the statutory double jeopardy provision of 18 Pa.C.S. § 111 was discussed at length by the Superior Court in Com. v. Wetton, 591 A.2d 1067 (Pa. Super. 1991) and on appeal to the Supreme Court in Com. v. Wetton, 641 A.2d 574 (Pa. 1994).

As a preliminary matter, the Superior Court held Section 111 barred prosecution of a Section 911(b)(4) charge where it followed a federal prosecution of the same conduct under 21 U.S.C. § 846. Because this issue was left undisturbed by the Supreme Court, this Court held Count 14 of the Information charging Conspiracy to violate the Corrupt Organizations statute pursuant to Section 911(b)(4) was DISMISSED with prejudice.

---

[7] In its Concise Statement of Matters Complained of on Appeal, the Commonwealth did not state the Court erred with regard to its dismissal of Section 911(b)(4). This Court addresses it here merely as it coheres with both the conspiracy dismissal and the remainder of the corrupt organizations analysis.

FILED/ORIGINAL

2017 NOV -6 AM 10: 30

HELEN I. MORGAN
PRO ANO CLERK

Wetton presents a nearly identical factual scenario to that before the Court. Defendant Wetton was subject to a federal prosecution and convicted of violating federal drug trafficking law under 21 U.S.C. § 846, as was the Defendant in this case. Defendant Wetton then challenged whether his conviction for Section 846 barred subsequent prosecution under Section 911 where the federal drug conspiracy was based on the same conduct as the Pennsylvania Section 911 charge. Despite the simple factual similarity of the cases, the three applicable opinions discussing Section 911(b)(3) in Wetton present a somewhat complex analytical posture.

The Wetton Superior Court held Section 911(b)(3) is not barred by double jeopardy considerations because it targets a separate evil from the federal drug conspiracy statute. In coming to this conclusion, the Superior Court held:

> "The evil targeted by the corrupt organization statute is the covert introduction of organized criminal activity into the law-abiding business community. Such permeation of the business community with criminal elements is accomplished by violence and intimidation. 18 Pa.C.S. § 911(a)(3).
>
> The federal conspiracy statute targets illegal agreements to violate the federal drug laws. 21 U.S.C.A. § 846. The federal drug trafficking laws are directed at controlling the illegal use of controlled substances to prevent the detrimental effect of such use. See, 21 U.S.C.A. § 801(2). This activity is totally criminal. It does not directly impact upon legitimate business activity, nor is it an attempt to gain control of that community." Id. at 1074.

The basis for the Superior Court's decision was that the Pennsylvania Corrupt Organizations charge targeted the permeation of illegal activity into legitimate business whereas the Federal drug conspiracy charge targeted wholly illegitimate activity.

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

FILED/COPIED/ORIGINAL

2017 NOV -8 AM 10: 50

HELEN L MORGAN
PRO THO CLERK

18

The second and third Traitz questions were thus both answered in the affirmative. The Corrupt Organizations charge had an additional element, and it targeted a separate evil from the Federal conspiracy charge. The appeal in Wetton to the Supreme Court of Pennsylvania resulted in an equally divided court. By rule, this resulted in the Opinion of the Superior Court remaining in effect.

The sole area of difference between the Opinion in Support of Affirmance and the Opinion in Support of Reversal was the result of the third Traitz question. The Opinion in Support of Affirmance adopted the rationale espoused by the Superior Court and did not perform a separate analysis.

The Opinion in Support of Reversal described the distinction of the Superior Court as one of form over substance. The Opinion further described the governmental interest as "the elimination of the pervasive drug trafficking network in our society." Id. at 579.

Subsequent to the decisions in the Wetton appeals and in response to the case of Com. v. Besch, 544 Pa. 1, 674 A.2d 655 (1996), the Pennsylvania Legislature modified the Corrupt Organizations law in Section 911. Besch addressed whether the Corrupt Organizations statute could extend to the prosecution of a wholly illegitimate enterprise. The Pennsylvania Supreme Court held that based on the statute as it then read (and how it read in the Wetton opinions), the Corrupt Organizations charge did not extend to wholly illegitimate enterprises.

Modifications by the legislature following the Besch decision controverted the interpretation of the Wetton Superior Court, the Opinion in Support of Affirmance by the Wetton Supreme Court, and the ultimate holding of the Besch case. The legislature, in redefining "Enterprise" under the statute, stated, "'Enterprise' means any individual,

FILED/ORIGINAL

2017 NOV -8 AM 10: 58

HELEN I. MORGAN
PRO AND CLERK

partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity, engaged in commerce and includes legitimate *as well as illegitimate entities* and governmental entities." 18 Pa.C.S. § 911(h)(3) (emphasis supplied). The changes made to the statute modified the law in a manner resulting in congruence with the reasoning of the Opinion in Support of Reversal. Because the Opinion in Support of Affirmance in Wetton was conditioned on the Superior Court's reasoning regarding the targeting of the statute toward legitimate enterprises, only the reasoning set forth in the Opinion in Support of Reversal remains applicable and of persuasive value.

For these reasons, the Court held the charge of Corrupt Organizations under Section 911(b)(3) targeted substantially the same evil as the Federal conspiracy charge and would be barred under the statutory double jeopardy provision pursuant to 18 Pa.C.S. § 111. While Defendant is charged with Section 911(b)(2) rather than (b)(3), the difference being the Defendant is the alleged ringleader of the enterprise as opposed to an employee, the evil against which the statute is targeted is the same. Count 1 of the information charging Corrupt Organizations - Control in Enterprise was DISMISSED with prejudice.

In its Concise Statement the Commonwealth contends this Court found the Corrupt Organizations charge to be barred based on application of Wetton and Besch. In further clarification of this Court's position, while the Wetton opinions and the Besch opinion form the background of its present holding, the modifications of the Corrupt Organizations statute made by the legislature rather than these cases themselves controlled this Court's reasoning. In the case of Wetton, the changes made by the

FILED/ORIGINAL

2017 NOV -8 AM 10: 5020

HELEN I. MORGAN
ERO    D. CLERK

legislature now mandate the opposite of the original Superior Court result, and this Court proceeded to apply the law in that manner.

The Order of this Court partially granting Defendant's Motion to Dismiss Based on Double Jeopardy and 18 Pa.C.S. § 111 should be AFFIRMED and the appeal should be DENIED.

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

FILED/ORIGINAL

2017 NOV -8 AM 10: 50

21

HELEN I. MORGAN
PRO AND CLERK